IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



| | |
|---|---|
| RICHARD W. COON, <br> 5709 Cutshaw Avenue <br> Richmond, VA  23226 <br><br> Plaintiff, <br><br> v. <br><br> MARSH & MCLENNAN AGENCY, LLC, <br> 1166 Avenue of the Americas <br> New York, New York  10036 <br><br> SERVE:   CT Corporation System <br> Registered Agent <br> 4701 Cox Road, Suite 301 <br> Glen Allen, VA  23060 <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 3:11CV463 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff Richard W. Coon, by counsel, hereby submits this Complaint for a Declaratory Judgment pursuant to 28 U.S.C. § 2201, seeking a declaration that certain provisions of his Employment Agreement, including the restrictive covenants and confidentiality provisions in Sections 7 and 8, are overly broad and unenforceable restraints of trade that violate the public policy of Virginia, and as grounds therefor states as follows:

### PARTIES

1. Plaintiff Richard W. Coon ("Coon") is an individual residing in the Richmond, Virginia metropolitan area, who is engaged in the business of providing services as an insurance account executive.

2. Defendant Marsh & McLennan Agency, LLC ("MMA") is a Delaware limited liability company with its principal place of business in New York, New York.

3. MMA is engaged in the business of providing insurance brokerage services for a variety of insurance products and is the former employer of Coon.

## JURISDICTION

4. Jurisdiction is appropriate in this Court pursuant to 29 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

5. In addition, there is an actual controversy between the parties, as further described herein, pursuant to 28 U.S.C. § 2201, concerning the enforceability of the restrictive covenants and confidentiality provisions of the Employment Agreement entered into between Coon and Thomas Rutherfoord, Inc. ("TRI"). TRI was acquired by MMA in March 2010 through a series of corporate transactions, and, upon information and belief, MMA succeeded to the rights of TRI. A copy of the Employment Agreement is attached as **Exhibit A**.

## VENUE

6. Venue is appropriate in this Court because MMA regularly conducts business in the Richmond Division and maintains an office at 1001 Haxall Point, Richmond, Virginia 23219.

## PERTINENT FACTUAL ALLEGATIONS

7. Coon began working for TRI in 1993.

8. Throughout his employment at TRI, and later at MMA after the merger, Coon was based in Richmond, Virginia, and sold exclusively commercial property and casualty insurance products. Coon sold only the following types of insurance products: commercial property, commercial automobile, commercial general liability, executive/professional liability, workers' compensation, umbrella/excess liability, and, on a rare occasion, aviation insurance.

9. Prior to its acquisition by MMA in March 2010, TRI was an independent insurance brokerage firm providing a wide array of insurance products and services to its clients.

2

10. By the time of its acquisition by MMA in 2010, TRI had more than 300 employees in ten offices located from Pennsylvania to Alabama; it had more than 1400 clients; its annual revenues were approximately $81 million; and it was the 14th largest independent brokerage firm in the United States.

11. Although Coon sold only commercial property and casualty insurance, TRI provided a variety of insurance products and related services to clients throughout the United States and elsewhere. The products and services provided by TRI to its clients, and marketed to prospective clients, included the following, only a small fraction of which were sold and marketed by Coon:

    a. Business insurance, including all forms of property and casualty insurance, executive protection and professional liability insurance, captives and alternative risk plans, and group self insurance.

    b. Surety bonding.

    c. Risk and claims control services, provided by and through Assurance Services Corporation, a TRI-owned company offering claims adjusting, claims management, risk control, and environmental management services.

    d. The design, construction and operation of numerous employee benefits programs and services provided by Rutherfoord Benefits Services, a TRI affiliate.

    e. Various environmental risk management and insurance products, including those offered by Faulkner & Flynn, Inc. a TRI affiliate.

    f. International property and casualty insurance and consulting and international employee benefits products and consulting, including political risk coverage and kidnap/ransom coverage.

g.  Personal insurance products and services offered through Rutherfoord Personal Account Services, including: homeowners' and tenant policies; personal excess/umbrella policies; automobile policies; policies for jewelry, furs, firearms, fine arts and collectibles; rental property policies; watercraft policies; recreational vehicle policies; and farm and related coverages.

h.  Maritime industry insurance products and services offered through the Rutherfoord Maritime Division, including worldwide insurance and liability management consulting.

i.  Specialized transportation industry insurance products and services, provided through Rutherfoord Transportation Division, including worldwide insurance and liability management consulting.

j.  Specialized real estate industry insurance products and services, provided through the Rutherfoord Real Estate Practice.

k.  Specialized construction industry insurance products and services, through TRI's Construction Practice, including surety capacity and all forms of business insurance and related services.

l.  Specialized healthcare industry insurance products and services, sold and marketed through the TRI Healthcare Practice, providing brokerage, risk management, consulting services and solutions for clients requiring medical professional liability coverage and associated products and programs, offered to clients and prospective clients, such as hospitals, long-term care facilities, physicians and surgeons, allied healthcare facilities, and non-physician healthcare providers.

12.     On September 6, 2000, Coon entered into the Employment Agreement with TRI that is attached as Exhibit A.

13.     The Agreement states that it is between Coon, on the one hand, and TRI "and its affiliates," on the other hand. TRI (and its affiliates) are referred to in the Agreement as the "Employer." In Section 9.5 of the Agreement, the definition of "Employer" is broadened further for purposes of the confidentiality provision and restrictive covenants in Section 7 and 8 of the Agreement, respectively, as follows: "Any reference to Employer in Sections 7, 8 and 9 of this Agreement shall be deemed to include Employer's parent, subsidiaries or affiliates, and/or its or their successors and assigns."

14.     Section 7 of the Agreement is entitled "Confidential or Proprietary Information," and provides as follows:

> 7.1.    For purposes of this Agreement, the term "confidential or proprietary information" includes *all information*, documents and/or materials (and copies thereof), *however obtained by Employee*, which concerns or consists of (1) *the identity of, or information about, Employer's past, present or prospective customers*, including, but not limited to, customer lists, *addresses, telephone numbers*, expiration dates, *contact information* or information regarding the business needs of any past, present or prospective customer, or marketing or pricing strategies applicable to any such customer; and (2) information concerning Employer's business which is not generally known in the insurance and/or financial services industry, including but not limited to, Employer's manner of operation, business plans, procedures, policies, and strategies.
>
> 7.2.    Employee agrees that Employer's confidential or proprietary information is and will remain the exclusive property of Employer, is economically valuable, material, confidential, special and a unique asset of employer, which substantially affects the successful conduct of the business of Employer and Employer's goodwill.
>
> 7.3.    *Employee will not, at any time and in manner*, either directly or indirectly, divulge, *make use of or communicate any of Employer's confidential or proprietary information* without Employer's express, written consent, except in the normal course of Employee's assigned duties hereunder.

> 7.4. The provisions of this Agreement and of Attachment A are and shall remain confidential and the Employee will not disclose these provisions directly or indirectly to any individual not having responsibility for the administration of this Agreement, unless otherwise required by law.

(Emphasis added). Thus, Section 7 prohibits Coon from *ever* revealing the name, address or phone number of any customer or prospective customer, or of any employee of any customer or prospective customer.

15. Section 8 of the Agreement is entitled "Competition After Termination" and it contains two sections: Sections 8.1 and 8.2. Those provisions state as follows:

> 8.1. Employee agrees that, upon termination of Employee's employment, for a period of two (2) years immediately thereafter, *Employee will not*, directly or indirectly, either on Employee's own behalf or on behalf of another, *have any business communication or contact with any customer of Employer*, whether initiated by the Employee or by the customer, if the purpose or effect (in whole or in part) of such communication or contact is to:
>
> (a) interfere or attempt to interfere with the business relationships of Employer;
>
> (b) cause, encourage or induce such customer to replace, lapse, forfeit, cancel or reject any insurance, bond or employee benefits contract issued or procured by or through Employer;
>
> (c) *cause, encourage or induce such customer to purchase, accept or require any insurance, bond or employee benefits contract other than one issued or procured by or through Employer; and/or*
>
> (d) *quote rates, provide any insurance, bond or employee benefits-related advice, counsel or services to any such customer or obligee, or receive from any such customer or obligee any premium, commission or fee related to or arising out of any such service.*
>
> 8.2. *For purposes of this Agreement, a "customer" shall be defined as (a) any entity (or parent, subsidiary, affiliate or bond obligee thereof) for whom Employer has provided any insurance, bond or employee benefits contract, advice or related services at any time within the two (2) year*

6

> *period immediately preceding the termination of Employee's employment with Employer.*

(Emphasis added).

16. Upon information and belief, on March 16, 2010, TRI was purchased by MMA through a series of corporate transactions, pursuant to which TRI ceased to exist as a separate legal entity as of March 17, 2010, and was merged into MMA. Accordingly, as of no later than March 17, 2010, upon information and belief, MMA, as well as its parents, subsidiaries and affiliates, became Coon's "Employer" under Section 9.5 of the Agreement.

17. MMA is an insurance brokerage firm and a wholly owned subsidiary of Marsh, Inc., which is described by MMA in its website as "the world's leading insurance broker and risk advisor."

18. As of at least June 14, 2011 (the last date of Coon's employment with MMA), MMA was the 12th largest insurance agency in the United States with over 1000 employees and annual revenues of approximately $290 million. MMA, during the two years preceding the cessation of Coon's employment, had clients throughout the entire United States, and offices located in at least Virginia, Georgia, North Carolina, Alabama, Pennsylvania, New York, Alaska, Massachusetts, Kansas, Texas, New Jersey, Connecticut and Florida.

19. In addition to TRI, MMA has acquired a number of other independent insurance agencies within the two years preceding the cessation of Coon's employment, thereby causing those agencies to be a part of and included within MMA. Those agencies, or parts thereof, include the Boston office of Kinloch Consulting Group, Hampton Roads Insurance Agency, Strategic Benefits Solutions, Inc., RJF Agencies, Inc., Trion Group, The Bostonian Group, Inc., Chas. G. Haake & Sons, Inc., and NIA Group, LLC. Coon had no contact with and did no work for the customers of any of the agencies listed herein that were recently acquired by MMA, nor

did Coon have contact with any of the MMA customers that had not been customers of TRI. Indeed, Coon had no contact with the vast majority of TRI's customers.

20. Marsh, Inc., is the parent of MMA, and therefore an "Employer" under Section 9.5 of the Agreement. Marsh, Inc. has over 23,000 employees and provides insurance products, services and advice to clients in over 100 countries. Coon had no contact with and did no work for Marsh, Inc., its customers or its prospective customers.

21. Marsh & McLennan Companies ("MMC") is the ultimate parent of MMA, it is an affiliate of MMA, and it is an "Employer" under Section 9.5 of the Agreement. MMC is a global professional services firm with approximately 52,000 employees and annual revenue of approximately $11 billion. MMC is also the parent of many other companies, including Guy Carpenter & Co., LLC, Mercer, Inc., and Oliver Wyman, Inc. The companies owned by MMC are also affiliates of MMA, by virtue of their common ownership, and are therefore "Employers" under Section 9.5 of the Agreement. Coon had no contact with and did no work for MMC, its customers or any of the companies owned by MMC, other than MMA.

22. In the last two years of his employment with TRI and MMA, Coon had between approximately 50-60 customers to whom he sold exclusively domestic commercial property and casualty insurance products. In his last two years of employment, Coon generated annual commission revenue of approximately $1.2 million each year, and earned income slightly in excess of $300,000 per year.

23. In the last two years of his employment with TRI and MMA, Coon's customers were located exclusively in Virginia, with the exception of one customer in Florida and two in Maryland.

24.     As part of their job duties at TRI and MMA, account executive/producers, such as Coon, and other professionals did not merely sell insurance products to existing customers. In addition, account executive/producers and other professionals at TRI and MMA solicit business from prospects. In the two years prior to Coon's cessation of employment on June 14, 2011, upon information and belief, account executive/producers and other individuals at TRI and MMA have collectively solicited tens of thousands of entities, if not more, for the sale or insurance products. In the course of those solicitations, account executives and producers typically provide some form of advice to prospects concerning the insurance needs of the prospects, whether they ultimately obtain the business or not, including providing insurance quotes, coverage reviews of existing insurance products, contract reviews to analyze exposures, safety reviews, or general insurance or business advice.

25.     For purposes of Sections 7 and 8 of the Agreement, the definition of "customer," as set forth Section 8.2, includes all entities (including their parents, subsidiaries, affiliates and bond obligees) to whom TRI and MMA provided any insurance, bonds or employee benefits contracts, "advice" or "related services" between June 15, 2009 and June 14, 2011, regardless whether TRI or MMA actually sold any insurance products, bonds or employee benefits contracts to those entities. Thus, the term "customer" includes all entities to whom any representative of TRI or MMA provided any "advice" or "related services," which are undefined, vague and ambiguous terms, to any TRI or MMA prospect during the two years preceding the cessation of Coon's employment.

26.     For purposes of Sections 7 and 8 the Agreement, the definition of "customer," as set forth in Section 8.2, includes all entities (including their parents, subsidiaries, affiliates and bond obligees) to whom Marsh, MMC and their affiliates have provided any insurance, bonds or

employee benefit contracts, "advice" or "related services" during the two years immediately preceding the termination of Coon's employment, regardless whether Marsh, MMC or their affiliates sold insurance products, bonds or employee benefits contracts to those entities. Thus, the term "customer" includes all entities to whom any representatives of Marsh, MMC and their affiliates, provided any "advice" or "related services" during the referenced two-year period.

27. During the two-year period immediately preceding the termination of Coon's employment on June 14, 2011, MMA, Marsh and MMC provided a broad range of insurance products, advice and related services to customers and prospective customers throughout the United States and the world.

28. The insurance products sold by MMA, Marsh and MMC included the types of products sold by TRI, referenced in paragraph 11 of the Complaint, and also included additional products and services referenced on the websites of MMA, Marsh and MMC.

29. The vast majority of insurance products, bonds and employee benefit contracts sold by TRI and MMA during the two years immediately preceding the cessation of Coon's employment were never sold by Coon.

30. The vast majority of insurance products, bonds and employee benefit contracts sold by Marsh and MMC during the two years immediately preceding the cessation of Coon's employment were never sold by Coon.

31. There are certain types of insurance products that TRI and MMA do not sell or offer for sale, including but not limited to pet insurance, travel/vacation insurance, title insurance, mortgage insurance and funeral insurance.

32. There are thousands, if not tens of thousands, of "customers" of MMA, as defined in Section 8.2 of the Agreement, with whom Coon had no contact whatsoever.

33. There are tens of thousands of "customers" of Marsh and MMC, as defined in Section 8.2 of the Agreement, with whom Coon had no contact whatsoever.

34. Coon did not have contact with the vast majority of "customers," as defined by Section 8.2 of the Agreement. In fact, Coon had contact with less than 1% of the "customers." Nevertheless, Coon is prohibited from, among other things, selling all types of insurance to all "customers."

35. Pursuant to Section 8 of the Agreement, Coon is prohibited from, among other things, engaging in the following conduct:

    a. Notwithstanding that Coon sold exclusively commercial property and casualty insurance products at TRI and MMA, he is prohibited from quoting rates for any type of insurance product, or providing any type of insurance, bond or employee benefits-related advice, counsel or services to any "customers," as defined in the Agreement, or to any "obligees."

    b. Coon is prohibited from quoting rates for any type of insurance product or providing any type of insurance product to any "customer," as defined in the Agreement, or to any obligee, even if TRI and MMA do not sell the particular type of insurance product.

    c. Coon is prohibited from quoting rates for any type of insurance product or providing any type of insurance, bond or employee benefits-related advice, counsel or services to any MMA "customer," even if Coon never had any contact with the customer and never knew that the entity was ever a "customer" of MMA or TRI.

    d. Coon is prohibited from quoting rates for any type of insurance product or providing any type of insurance, bond or employee benefits-related advice, counsel or

services to any Marsh "customer," even if Coon never had any contact with the customer and never knew that the entity was ever a "customer" of Marsh.

  e. Coon is prohibited from quoting rates for any type of insurance product or providing any type of insurance, bond or employee benefits-related advice, counsel or services to any MMC "customer," even if Coon never had any contact with the customer and never knew that the entity was ever a "customer" of MMC.

  f. Coon is prohibited from quoting rates or providing any type of insurance, bond or employee benefits-related advice, counsel or entity to thousands, if not tens of thousands, of entities who were merely solicited by MMA, Marsh and MMC, but whom MMA, Marsh and MMC have never sold products or services, and whom MMA, Marsh and MMC cannot even identify.

  g. Coon is prohibited from quoting rates or providing any type of insurance, bond or employee benefits-related advice, counsel or services to numerous bond obliges, who have never even purchased any products or services from MMA, Marsh or MMC.

36. There is no feasible way for Coon to identify the specific "customers" or "obligees" covered by Section 8 of the Agreement, as to whom he is prohibited from quoting rates or providing any insurance, bonds or employee benefits-related advice, counsel or services.

37. Neither MMA, Marsh nor MMC can identify the specific "customers" or "obligees" covered by Section 8 of the Agreement, and to whom the prohibitions on Coon apply.

38. Coon is currently employed by BB&T Insurance Services ("BB&T") as an account executive/producer and he wishes to sell and market insurance products to various entities, including those to whom MMA (and possibly Marsh and MMC) sold insurance products and services within the two years immediately preceding the termination of his employment.

39. On or about June 20, 2011, MMA notified BB&T that Coon was obligated to comply with the terms of Sections 7 and 8 of the Agreement and implicitly, but clearly, threatened litigation against him if he did not adhere to the demands of MMA. Based on the Agreement and the threats of MMA, Coon is restricted in the practice of his profession.

40. Sections 7 and 8 are overly broad and unenforceable restraints of trade that violate the public policy of Virginia because they are more restrictive than necessary to protect the legitimate interests of MMA. For example, and this is not intended to be an exhaustive list: Coon is prohibited from engaging in numerous work activities, such as providing employee benefits advice, that he never engaged in while at TRI or MMA; he is prohibited from selling to tens of thousands of entities, all over the world, with whom he has had no contact and who cannot even be identified by him or MMA; he is prohibited from selling to tens of thousands of entities to whom TRI and MMA have never sold any products or services, but who were merely solicited, and cannot be identified; and he is prohibited from selling products and services that TRI and MMA have never even sold or offered for sale.

41. Section 7 is unenforceable for additional reasons, including that it is not limited in time; it is overly broad, vague and ambiguous; and it extends to information that is not confidential in nature.

42. The restrictions at issue are so broad that Coon is effectively prohibited from engaging in his profession because he does not know to whom he can sell and to whom he cannot sell.

43. Attached to the Agreement as "Addendum A" is an addendum creating an exception to Section 8, allowing Coon to do business with nine listed clients, on the condition that Coon pay a "departure" fee if he sells insurance products to those clients. Because Section 8

is unenforceable in its entirety and could not be applied under any circumstances, no exception is applicable and Addendum A is unenforceable.

### COUNT I (DECLARATORY RELIEF)

44. The allegations of paragraphs one through 43 are hereby realleged and incorporated as though fully set forth herein.

45. Although Sections 7 and 8 are invalid and unenforceable under Virginia law, Coon has been threatened with litigation seeking enforcement.

46. An actual, immediate controversy exists between Coon and MMA with respect to the applications and enforceability of the Agreement, including Sections 7, 8 and Addendum A.

47. Pursuant to 28 U.S.C. § 2201, this Court has the power and authority to adjudicate, determine and declare the rights of the parties in regard to the Agreement, including Sections 7, 8 and Addendum A.

48. For the reasons set forth in the Complaint, as well as other reasons to be proffered to the Court, Sections 7, 8 and Addendum A are unenforceable under Virginia law.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, Richard W. Coon hereby requests that the Court granted him the following:

a. Issue an Order and Judgment that declares Section 7, 8 and the Addendum to the Agreement to be overly broad and unenforceable as to him;

b. Order any relief necessary to implement or enforce the declaratory judgment, including, if permitted, monetary damages resulting from the inclusion of Sections 7 and 8 in the Agreement;

c. Award Coon his costs in obtaining the relief requested; and

d. Award such other further relief as this Court deems appropriate

A TRIAL BY JURY IS DEMANDED.

RICHARD W. COON

By _____
David E. Constine, III, VSB No. 23223
A. Tevis Marshall, VSB No. 68401
Attorneys for Plaintiff
Troutman Sanders LLP
P. O. Box 1122
Richmond, Virginia  23218-1122
Telephone: (804) 697-1200
Fax: (804) 697-1339
david.constine@troutmansanders.com
tevis.marshall@troutmansanders.com

#2069298